Bruce L. **STOUT** et al.

v.

John D. **BOTTORFF,** Secretary of State
of the State of Indiana, et al.

Nelson **GRILLS**

v.

Roger D. **BRANIGIN,** Governor of Indi-
ana, et al., as Members of the State
Election Board.

Nos. IP 61-C-236, IP 62-C-326.

United States District Court
S. D. Indiana,
Indianapolis Division.

Opinion and Order Sept. 20, 1965.

Entry Appointing Advisory Panel
Sept. 22, 1965.

Robert D. Risch and Jerome Strauss, John Wood, William D. Ruckelshaus, and Frank E. Spencer, Indianapolis, Ind., for plaintiff Stout et al.

Nelson Grills, Indianapolis, Ind., pro se.

John J. Dillon, Atty. Gen., of Ind., Indianapolis, Ind., for defendants Bottorff et al.

Before KILEY, Circuit Judge, and STECKLER and GRANT, Chief Judges.

PER CURIAM.

Plaintiffs' Third Supplemental Complaint raises the issue whether Indiana Senate Enrolled Act 341, Chapter 230, Acts of 1965, passed by the Ninety-fourth General Assembly on March 5, 1965, is unconstitutional and void for violation of the Fourteenth Amendment to the United States Constitution. We hold the Act unconstitutional because the "special joint districts" [1] created by the Act in apportioning seats in the Indiana Senate and House of Representatives result in impairment and dilution of the weight of the votes of plaintiffs and others who live in smaller counties joined with larger counties in those districts, for members of the General Assembly, in comparison with the weight of votes of residents of other parts of the state, as well as in comparison with the weight of votes of residents of the larger counties to which the plaintiffs' smaller counties are joined.

This is plaintiffs' [2] third successful attack on Indiana apportionment stat-

---

1. Plaintiffs' term. Defendants refer to these districts as "floterial districts."

2. New parties plaintiff were added on motion filed with plaintiffs' Third Supplemental Complaint, to represent the voters of smaller counties in the special joint districts. The court on its own motion and by agreement of the parties aligned defendant Earl Sutherlin, Clerk of the Monroe Circuit Court and ex offico mem-

ber of the Monroe County Election Board, with plaintiffs, since by his answer he admitted unconstitutionality of the 1965 Act and joined in plaintiffs' prayer for relief.

No question is raised in this case, nor, on the record before us, could one be raised that the legislature's design in the 1965 Act was tainted by bad faith.

utes. The original attack[3] was directed at the lack of a "rational basis" in the 1921 Acts for discrimination among voters in various districts.[4] The second[5] was aimed at the debasement, in the 1963 Act, of votes in the larger, more populous counties resulting in substantial inequalities in the voting rights of citizens of those counties as measured against the voting rights of citizens in the smaller, less populated counties.[6] This third attack, against the 1965 Act, presents the other side of that coin, i. e., that votes of citizens in some of the smaller counties have, in the 1965 Act, been debased vis-a-vis votes of citizens in the more populous counties, as well as other districts generally. The three suits present variations of the same theme—denial of the civil right to an equal vote, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

In deciding the question before us we think some prefatory remarks are not out of place. In our first opinion in this case we wrote of the "unfortunate fact" that federal courts have been drawn into this political arena by the default of elected representatives to abide by their duties under state constitutions. This court has stayed at the "admonition stage" throughout the history of this case, with the hope and expectation that Indiana "State agencies"[7] would solve their own reapportionment problem. The court realizes that there is no easy solution to the problem, men and politics being what they are.

The solution for legislators in Indiana, bound to support both the Indiana and Federal Constitutions, is a difficult one indeed. The difficulty arises in accommodating the requirements of Indiana law to the federal standard announced in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and its companion cases,[8] in respect of apportioning legislative districts.

■ The Indiana Constitution in Article 4, Sections 5 and 6,[9] requires that

3. The original complaint was filed on August 2, 1961, making this one of the oldest reapportionment cases in the country.

4. In Stout v. Hendricks, 228 F.Supp. 568 (S.D.Ind. November 8, 1963), this court struck down the 1921 Acts (C.C. 78, 271) and enjoined the defendant state officials from conducting any further elections under them, but postponed the effect of the injunction until after the 1964 elections. During the regular 1963 session the General Assembly had passed a new apportionment act, but the Governor vetoed it and the legislature failed to override the veto. Subsequent to our Stout v. Hendricks decision, however, the Indiana Supreme Court, in Hendricks v. State ex rel. Northwest Ind. Crime Comm., 196 N.E.2d 66 (Ind.1964), effectively set aside the veto, and the 1964 elections were held under the 1963 Act.

5. Plaintiffs filed a Second Supplemental Complaint adding new parties and attacking the constitutionality of the 1963 Act.

6. In our Entry of February 26, 1965, this court held the 1963 Act unconstitutional because it violated both the Federal and Indiana Constitutions.

7. This term may include the state legislature, courts or such other appropriate body as the State may choose to employ to effect reapportionment. Cf. Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).

8. WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed. 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632.

9. Indiana Constitution, Article 4, § 5 (1881), provides in part:
   "The number of Senators and Representatives shall * * * be fixed by law, and apportioned among the several counties, according to the number of male inhabitants, above twenty-one years of age, in each * * *."
   Article 4, § 6 provides:
   "A Senatorial or Representative District, where more than one county shall constitute a district, shall be composed of contiguous counties; and no county,

there be both "local county representation" and "proportionate popular representation" in the General Assembly, with the design that neither be neglected or sacrificed for the other, and that county integrity be regarded as essential. Denney v. State ex rel. Basler, 144 Ind. 503, 42 N.E. 929, 934, 937, 31 L.R.A. 726 (1896). Section 6 expressly prohibits forever the dividing of counties for senatorial districts. There is no prohibition against dividing counties for house districts. The Indiana Supreme Court in Denney announced that "double districts" in the 1895 and 1893 apportionment schemes rendered those Acts unconstitutional. The term "double districts," however, referred to "odious" or "unfair" districting which violated the "principle" that a county having a population of less than a "ratio," or ideal population, shall not be grouped with another or other counties so as to give it a voice in the election of more than one senator or representative.[10] The federal standard, however, set by the several cases following Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), requires that in any event no citizen's vote for a member of either house of a state legislature may be substantially debased, devalued or impaired in comparison with that of the vote of a citizen in any other part of the state. The Indiana legislator, bound by oath to support both State and Federal Constitutions, must, if possible, steer a course safely within the requirements of both.

This court has a kindred decisional problem: On the one hand to avoid exacting too much precision in reapportionment, leaving no room for a realistic legislative freedom to adjust and compromise; and, on the other hand, to avoid falling short in our requirements, thus inviting purposeful unconstitutional subversion of individual voting rights because of majority or minority pressures or claims.[11]

█ Before turning to the principal issue, we decide two subordinate questions. First, plaintiff Grills, a resident of Marion County and a member of the Senate of the Ninety-fourth General Assembly, is without standing in this phase of the proceedings to assert that the 1965 Act is invalid because it dilutes the votes of some residents of the state. He makes no complaint of debasement of his vote or those of Marion County voters generally, and we see no merit in his claim that as an elected state senator he has standing to assert in this proceeding at this time a right to serve in a constitutionally-apportioned General Assembly.

---

for Senatorial apportionment, shall ever be divided."
It is, of course, agreed that the word "male," above, has been effectively deleted from Article 4, Section 5, by the Nineteenth Amendment to the United States Constitution.

10. Denney v. State ex rel. Basler, 144 Ind. 503, 42 N.E. 929, 938–39, 31 L.R.A. 726 (1896). As far as we can determine, the Indiana Supreme Court has not reconsidered its holding expressed in Denney since that case was decided in 1896. There have recently been filed in Indiana courts several cases which have called into question the constitutionality of the 1965 Act; e.g., Grills v. Branigin, Cause No. C 64–153, Hendricks Cir. Ct., 1965; Stewart v. Bottorff, Cause No. S 665–37, Super.Ct., Marion County, 1965; Castor v. Newlin, Cause No. C 65–382, Marion Cir. Ct., 1965. But as far as this court is advised, the questions now before us are not now before the Indiana Supreme Court.

11. Professor Lon L. Fuller, in his recent book, THE MORALITY OF LAW, 178 (1964), has said of the Supreme Court's difficulty in this area:
"In carrying out the commitment it undertook in Baker v. Carr the Court will find itself, I believe, compelled to tread a difficult middle course. If, on the one hand, it lays down standards that are too exacting and comprehensive, it will stifle the indispensable preliminary processes of adjustment and compromise. If its standards are too

■ We also see no merit in plaintiff Grills' attack on the 1965 Act for failure of the legislature to divide Marion County into districts rather than making it a single, multi-member district electing members of the General Assembly at large. In support of this claim that the Act thus deprives certain voters in Marion County of equal representation Grills has submitted voting records showing that in some past elections certain townships or other areas of the county would have elected a candidate of the minority party in that particular election if the county had been subdistricted. We have been shown no evidence in these records of any discrimination, purposeful or otherwise, against any group of voters in the at-large election system in Marion County, and in the absence of such a showing, Grills is not entitled to any relief on the basis of this claim. Fortson v. Dorsey, 379 U.S. 433, 438–39, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965); Reynolds v. Sims, 377 U.S. at 577, 84 S.Ct. 1362. The Third Supplemental Complaint of plaintiff Grills will be dismissed without prejudice to his right to assert any valid claims with respect to the matter of Indiana legislative reapportionment in the future.

■ Secondly, defendants claim, in justification of the 1965 Act with respect to certain counties, that the legislators followed language in this court's opinion in Stout v. Hendricks, 228 F.Supp. 568 (S.D.Ind.1963).[12] The language assert-edly relied upon did not establish the law of this case for those counties with respect to the 1965 Act. What was said in this regard in the "Statement of Facts" appended to the Hendricks decision was clearly for illustrative purposes relating to the issue there.

There is no dispute among the parties about the population figures, nor as to their distribution among the districts. The figures shown in appendices A and B to this opinion are taken from the 1960 federal census.

The 29th special joint senatorial district combines Marion, Morgan, and Hendricks counties, with respective voting populations of 424,090, 19,116, and 23,304. According to its population, Marion County itself is entitled to, and was allocated in the 1965 Act, seven senators of its own as the 28th senatorial district. It shares an eight senator with Morgan and Hendricks counties as the 29th district. Comparing the 28th and 29th districts, we find 424,090 voters electing seven senators in the 28th and 466,510 electing one senator in the 29th. Clearly the vote of the Morgan or Hendricks county voter is not approximately equal to that of the Marion County voter. In the 28th district there is one senator for every 60,584 voters, while in the 29th there is one senator for every 466,510 voters.[13] The ideal district for the Senate is 55,558. The disparity between districts is beyond any permissible deviation from the equal population standard. Sim-

loose, these processes are not likely to produce a solution acceptable to the Court."

12. This language, appearing at 228 F.Supp. 577, stated, for example, that Marion County would be entitled to 15 representatives and 7½ senators. In comparing the actual representation of a multi-member district such as Marion County to the ideal district, however, the total number of residents or voters should be divided by the number of representatives, thus allocating the "excess" population over the total number of representatives. Judged this way, the deviation of the 28th senatorial district from the ideal is less than 10 per cent.

13. We set aside the question of the additional representation of voters in the larger counties in the special joint districts in both houses by means of the overlapping senator or representative. The voter in the smaller counties still must share his vote with all of the voters in the larger county.

ilar impermissible disparities exist also in the other accused special joint senatorial districts.

Moreover, with respect to other districts in other parts of the state, a substantial dilution of the weight of votes in Morgan and Hendricks counties is clearly seen by reference to the population figures. We cite but one example. The voting population of the 26th senatorial district, composed of Rush, Shelby, and Fayette counties, is 50,972; the population of the 29th district is 466,510. Accordingly, one vote in the 26th district is equal to 9.15 votes in the 29th district.

Impermissible disparities from the ideal also exist in house districting under the 1965 Act. For example, the 46th joint special house district comprises Monroe and Lawrence counties, with respective voting populations of 34,316 and 22,232. Monroe County alone, as the 45th district, elects one representative and in conjunction with Lawrence County in the 46th district votes for another. Thus, in the 45th district there is one representative for 34,316 voters and in the 46th district there is one representative for 56,548 voters. But the ideal house district is 27,779. Moreover, when compared with the smallest house district, the 35th, composed of Hendricks County, with a voting population of 23,304, the 46th district is 2.4 times as large, so that a vote for a representative in Hendricks County has 2.4 times the weight of a similar vote in Lawrence County. The disparities shown here are impermissible and deny equal protection of the laws to voters in the smaller counties joined to the larger.

The examples given, senate district 29 and house district 46, are typical of discrepancies existing within the other accused special joint districts and in comparison with other districts in the state, as reference to appendices A and B of this opinion will readily disclose. The total effect is that voters "here" suffer substantial debasement of their voting rights as compared with voting rights "there." Reynolds v. Sims, 377 U.S. at 563, 84 S.Ct. 1362. This result violates the Equal Protection Clause of the Fourteenth Amendment. As the Supreme Court said in that case,

> "Full and effective participation by all citizens in state government requires, therefore, that each citizen have an equally effective voice in the election of members of his state legislature. Modern and viable state government needs, and the Constitution demands, no less." 377 U.S. at 565, 84 S.Ct. at 1383.

No valid justification for the foregoing disparities has been shown. We think the defense asserted, that the voters of Morgan and Hendricks counties are treated equally with other voters because the entire voting population of senate district 29 divided by eight, the number of senators allotted to Marion, Morgan, and Hendricks counties, closely approximates the size of the ideal district, avoids reality. The voters in Morgan and Hendricks have no participation in the election of the seven senators from the single county district of Marion. Votes in Hendricks and Morgan have less than one-ninth the weight of votes in Marion County.

This court also cannot accept the suggestion that compromises of the political parties in nominating candidates and the sense of duty of representatives will as a practical matter assure virtual equality of representation in the special joint districts. The constitutional right of equality of representation cannot rest upon such possibilities.

The effect of our decision is to remit the reapportionment problem to the Indiana legislature for solution. It is their primary responsibility. There can be no undue delay in providing a solution since defendants are charged with duly setting in motion the election machinery for

the 1966 elections for the General Assembly. Furthermore, should the state authorities fail or refuse to achieve a constitutional apportionment plan and so compel this court to do so, we must have an appropriate period of time in which to promulgate a valid plan. We shall in our entry of decision order what seems to us to be a reasonable deadline for state action.

■ The court is hopeful that the Indiana General Assembly can rearrange the legislative districts to meet the Indiana as well as the federal constitutional standards. We are conscious of the dilemma that would face the legislators in performing that task if the limitations of the Indiana Constitution, and especially its interpretation by the decision in Denney, continue to stand in the way and prevent the legislative districts being established in accordance with the federal standard. An apportionment scheme based on state constitutional provisions which fails to meet the federal standard, however, is violative of the Fourteenth Amendment, and in the case of such an "unavoidable conflict" between the Federal and State Constitutions, "the Supremacy Clause of course controls." Reynolds v. Sims, 377 U.S. at 584, 84 S.Ct. at 1393. We think that the Indiana Legislature must make every possible effort to "accommodate * * * the apportionment provisions" of the Indiana Constitution and the rule of the Denney case.[14] But it cannot accommodate either the Indiana constitutional apportionment requirement or the rule in Denney at the expense of violating the Equal Protection Clause of the Fourteenth Amendment by failing to accord substantial equality of representation in the General Assembly to voters of Indiana.

■ This court cannot in advance decide what the permissible deviations from the ideal population figures might be. We can only say, in accordance with the Supreme Court in Reynolds v. Sims, that we have no disposition to expect mathematical exactitude in providing each individual a vote of approximately equal weight.[15] But the principle of fairness in approximating as closely as possible equality of votes in the selection of legislators must be the guiding star.

■ We therefore declare that Senate Enrolled Act 341, Chapter 230, of the Acts of 1965 is unconstitutional and void. The motion of plaintiffs in Cause No. IP 61–C–236 for judgment on the pleadings is allowed. The plaintiffs are entitled to the injunctive relief prayed. Judgment will be entered accordingly.

14. See Reynolds v. Sims, 377 U.S. 584, 84 S.Ct. 1362. As the Supreme Court therein states:
"A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible, and provide for compact districts of contiguous territory in designing a legislative apportionment scheme. Valid considerations may underlie such aims. Indiscriminate districting, without any regard for political subdivision or natural or historical boundary lines, may be little more than an open invitation to partisan gerrymandering. Single-member districts may be the rule in one State, while another State might desire to achieve some flexibility by creating multimember or floterial districts.

Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State." 377 U.S. at 578–79, 84 S.Ct. at 1390. (Footnotes omitted.)

15. Congress is considering legislation, which has passed the House of Representatives, establishing fifteen per cent as the limit of deviation in congressional districting, 33 U.S.L. WEEK 2472, 2482, and in Toombs v. Fortson, 241 F.Supp. 65, 70 (N.D.Ga.1965), the court, while declining to set a mathematical formula, held that a greater variance than fifteen per cent "would be difficult, if not impossible, to justify."

## APPENDIX A

### SENATE
#### 1965 Apportionment Act

| Dist. No. | Counties | Total Voting Pop. | No. of Senators | Pop. per Senator | % of Ratio or Ideal Dist. |
|---|---|---|---|---|---|
| I | Districts Exclusive of Special Joint Districts and Counties Included Therein | | | | |
| 3 | LaPorte | 58,407 | 1 | 58,407 | 105.1 |
| 6 | Elkhart | 62,650 | 1 | 62,650 | 112.8 |
| 7 | Lagrange-Steuben-DeKalb-Noble | 53,517 | 1 | 53,517 | 96.3 |
| 8 | Newton-Jasper-White-Carroll-Clinton | 58,259 | 1 | 58,259 | 104.9 |
| 9 | Starke-Pulaski-Fulton-Cass | 54,297 | 1 | 54,297 | 97.7 |
| 12 | Wabash-Grant | 64,211 | 1 | 64,211 | 115.6 |
| 13 | Huntington-Wells-Adams-Blackford | 56,312 | 1 | 56,312 | 101.4 |
| 14 | Wayne-Union | 49,324 | 1 | 49,324 | 88.8 |
| 15 | Miami-Howard | 63,048 | 1 | 63,048 | 113.5 |
| 16 | Benton-Tippecanoe | 58,268 | 1 | 58,268 | 104.9 |
| 18 | Montgomery-Putnam-Owen-Clay | 57,366 | 1 | 57,366 | 103.3 |
| 20 | Boone-Hamilton-Tipton | 49,699 | 1 | 49,699 | 89.5 |
| 25 | Decatur-Franklin-Ripley-Dearborn-Ohio | 53,150 | 1 | 53,150 | 95.7 |
| 26 | Rush-Shelby-Fayette | 50,972 | 1 | 50,972 | 91.7 |
| 27 | Johnson-Bartholomew | 52,909 | 1 | 52,909 | 95.2 |
| 30 | Sullivan-Knox-Gibson | 58,688 | 1 | 58,688 | 105.6 |
| 31 | Greene-Monroe-Brown | 55,455 | 1 | 55,455 | 99.8 |
| 32 | Martin-Lawrence-Daviess-Orange | 54,537 | 1 | 54,537 | 98.2 |
| 33 | Jackson-Jennings-Washington-Scott | 46,994 | 1 | 46,994 | 84.6 |
| 34 | Clark-Jefferson-Switzerland | 54,914 | 1 | 54,914 | 98.8 |
| 35 | Perry-Crawford-Harrison-Floyd | 56,920 | 1 | 56,920 | 102.5 |
| 36 | Dubois-Pike-Warrick-Spencer | 47,350 | 1 | 47,350 | 85.2 |

| Dist. No. | Counties | Total Voting Pop. | No. of Senators | Pop. per Senator | % of Ratio or Ideal Dist. |
|---|---|---|---|---|---|
| II | Special Joint Districts Combined with Overlapping Single-County Districts (The county represented in both districts is underlined.) | | | | |
| 1, 2 | Lake-Porter | 327,010 | 6 | 54,502 | 98.1 |
| 4, 5 | St. Joseph-Marshall | 161,041 | 3 | 53,680 | 96.6 |
| 10, 11 | Kosciusko-Whitley-Allen | 173,517 | 3 | 57,839 | 104.1 |
| 17, 19 | Warren-Fountain-Vermillion-Parke-Vigo | 105,682 | 2 | 52,841 | 95.1 |
| 21, 22 | Madison-Hancock-Henry | 121,021 | 2 | 60,510 | 108.9 |
| 23, 24 | Delaware-Randolph-Jay | 96,425 | 2 | 48,212 | 86.8 |
| 28, 29 | Marion-Hendricks-Morgan | 466,510 | 8 | 58,314 | 105.0 |
| 37, 38 | Vanderburgh-Posey | 113,471 | 2 | 56,735 | 102.1 |
| III | Special Joint Districts as Single Member Districts | | | | |
| 2 | Lake-Porter | 327,010 | 1 | 327,010 | 588.6 |
| 5 | St. Joseph-Marshall | 161,041 | 1 | 161,041 | 289.9 |
| 10 | Kosciusko-Whitley-Allen | 173,517 | 1 | 173,517 | 312.3 |
| 17 | Warren-Fountain-Vermillion-Parke-Vigo | 105,682 | 1 | 105,682 | 190.2 |
| 22 | Madison-Hancock-Henry | 121,021 | 1 | 121,021 | 217.8 |
| 24 | Delaware-Randolph-Jay | 96,425 | 1 | 96,425 | 173.6 |
| 29 | Marion-Hendricks-Morgan | 466,510 | 1 | 466,510 | 839.7 |
| 38 | Vanderburgh-Posey | 113,471 | 1 | 113,471 | 204.2 |

## APPENDIX B

## HOUSE OF REPRESENTATIVES
### 1965 Apportionment Act

| Dist. No. | Counties | Total Voting Pop. | No. of Representatives | Pop. per Representative | % of Ratio or Ideal Dist. |
|---|---|---|---|---|---|
| **I** | **Districts Exclusive of Special Joint Districts and Counties Included Therein** | | | | |
| 1 | Lake | 293,316 | 11 | 26,665 | 96.0 |
| 4 | LaPorte | 58,407 | 2 | 29,203 | 105.1 |
| 5 | St. Joseph | 141,959 | 5 | 28,392 | 102.2 |
| 6 | Elkhart | 62,650 | 2 | 31,325 | 112.8 |
| 7 | Kosciusko | 24,195 | 1 | 24,195 | 87.1 |
| 8 | Lagrange-Noble | 26,141 | 1 | 26,141 | 94.1 |
| 9 | Steuben-DeKalb | 27,376 | 1 | 27,376 | 98.5 |
| 10 | Starke-Marshall | 29,330 | 1 | 29,330 | 105.6 |
| 11 | Allen | 136,967 | 5 | 27,393 | 98.6 |
| 12 | Wabash-Whitley | 31,642 | 1 | 31,642 | 113.9 |
| 13 | Fulton-Miami | 33,046 | 1 | 33,046 | 119.0 |
| 14 | Cass | 26,077 | 1 | 26,077 | 93.9 |
| 15 | Benton-Pulaski- | | | 26,118 | |
| | White | 26,118 | 1 | 33,313 | 94.0 |
| 16 | Huntington-Wells | 33,313 | 1 | 28,026 | 119.9 |
| 17 | Adams-Jay | 28,026 | 1 | 25,722 | 100.9 |
| 22 | Tippecanoe | 51,444 | 2 | | 92.6 |
| 23 | Warren-Fountain- | | | 28,135 | |
| | Vermillion | 28,135 | 1 | 34,446 | 101.3 |
| 24 | Montgomery-Putnam | 34,446 | 1 | 35,647 | 124.0 |
| 25 | Clinton-Boone | 35,647 | 1 | 33,017 | 128.3 |
| 26 | Tipton-Hamilton | 33,017 | 1 | 25,322 | 118.9 |
| 27 | Madison | 75,966 | 3 | 29,480 | 91.2 |
| 32 | Henry | 29,480 | 1 | 27,646 | 106.1 |
| 33 | Hancock-Rush | 27,646 | 1 | 28,273 | 99.5 |
| 34 | Marion | 424,090 | 15 | 23,304 | 101.8 |
| 35 | Hendricks | 23,304 | 1 | 26,357 | 83.9 |
| 36 | Morgan-Owen | 26,357 | 1 | 29,740 | 94.9 |
| 37 | Sullivan-Clay | 29,740 | 1 | 25,059 | 107.1 |
| 40 | Johnson | 25,059 | 1 | 32,341 | 90.2 |
| 41 | Shelby-Decatur | 32,341 | 1 | 23,875 | 116.4 |
| 42 | Fayette-Franklin | 23,875 | 1 | 29,283 | 85.9 |
| 43 | Ripley-Dearborn | 29,283 | 1 | | 105.4 |
| 44 | Bartholomew- | | | 31,844 | |
| | Brown | 31,844 | 1 | 33,038 | 114.6 |
| 47 | Greene-Daviess | 33,038 | 1 | 25,889 | 118.9 |
| 48 | Knox | 25,889 | 1 | 30,404 | 93.2 |
| 49 | Gibson-Posey | 30,404 | 1 | 25,451 | 109.4 |
| 50 | Vanderburgh | 101,805 | 4 | | 91.6 |
| 51 | Warrick-Perry- | | | 33,520 | 120.7 |
| | Spencer | 33,520 | 1 | | |

| Dist. No. | Counties | Total Voting Pop. | No. of Representatives | Pop. per Representative | % of Ratio or Ideal Dist. |
|---|---|---|---|---|---|
| I | Districts Exclusive of Special Joint Districts and Counties Included Therein—Continued | | | | |
| 52 | Dubois-Martin-Pike | 29,647 | 1 | 29,647 | 106.7 |
| 53 | Harrison-Orange-Crawford | 27,012 | 1 | 27,012 | 97.2 |
| 54 | Floyd | 30,503 | 1 | 30,503 | 109.8 |
| 57 | Jackson-Jennings | 28,251 | 1 | 28,251 | 101.7 |
| 58 | Jefferson-Scott-Switzerland-Ohio | 29,974 | 1 | 29,974 | 107.9 |
| II | Special Joint Districts Combined with Overlapping Single-County Districts (The county represented in both districts is underlined.) | | | | |
| 2, 3 | Porter-Jasper-Newton | 50,872 | 2 | 25,436 | 91.6 |
| 18, 19 | Grant-Blackford | 53,857 | 2 | 26,928 | 96.9 |
| 20, 21 | Howard-Carroll | 50,796 | 2 | 25,398 | 91.4 |
| 28, 29 | Delaware-Randolph | 82,465 | 3 | 27,488 | 99.0 |
| 30, 31 | Wayne-Union | 49,324 | 2 | 24,662 | 88.8 |
| 38, 39 | Vigo-Parke | 77,547 | 3 | 25,849 | 93.1 |
| 45, 46 | Monroe-Lawrence | 56,548 | 2 | 28,274 | 101.8 |
| 55, 56 | Clark-Washington | 46,235 | 2 | 23,117 | 83.2 |
| III | Special Joint Districts as Single Member Districts | | | | |
| 3 | Porter-Jasper-Newton | 50,872 | 1 | 50,872 | 183.2 |
| 18 | Grant-Blackford | 53,857 | 1 | 53,857 | 193.8 |
| 21 | Carroll-Howard | 50,796 | 1 | 50,796 | 182.8 |
| 29 | Delaware-Randolph | 82,465 | 1 | 82,465 | 296.9 |
| 31 | Wayne-Union | 49,324 | 1 | 49,324 | 177.6 |
| 39 | Vigo-Parke | 77,547 | 1 | 77,547 | 279.2 |
| 46 | Monroe-Lawrence | 56,548 | 1 | 56,548 | 203.6 |
| 56 | Clark-Washington | 46,235 | 1 | 46,235 | 166.4 |

## ORDER

This cause came on to be heard upon plaintiffs' Third Supplemental Complaint, defendants' answers thereto, briefs of the parties, and plaintiffs' motion for judgment on the pleadings. And the court having realigned parties, heard arguments, and having considered the various pleadings, briefs, and proposed findings of fact and conclusions of law submitted by the parties;

The court finds that plaintiff Grills has no standing to complain of the apportionment of special joint districts in which he does not reside, and finds without merit his complaint that Marion

County, where he resides, is unconstitutionally apportioned because it is not subdistricted so that townships within the county may have representation by legislators of their choice.

It is ordered, therefore, that the complaint in Cause No. IP 62–C–326 be and it hereby is dismissed without prejudice, as provided in the opinion filed in this cause filed simultaneously with this entry.

The court further finds that the special joint districts provided by Senate Enrolled Act 341, Chapter 230, of the Acts of 1965, for elections to the Indiana General Assembly for both the House and Senate result in substantial and unjustified debasement, devaluation and impairment of the right of voters within said special joint districts and in relation to voters in other districts in the State.

The court therefore declares that under the federal standards announced in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), Senate Enrolled Act 341 is unconstitutional and void as violative of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States.

It is ordered that defendants named in the Stout action, and the unnamed defendants in that action, as members of the same class as those named in said action, all of whom are officials of the State of Indiana or of counties in the State of Indiana, and their successors in office, be and they are hereby restrained and enjoined from conducting any elections under said Senate Enrolled Act 341.

The court hereby sets December 1, 1965 as the cutoff date of the period within which the Indiana legislature may adopt a constitutional reapportionment scheme for the State General Assembly elections for the year 1966. The court retains jurisdiction for the purpose of passing upon any future claims of unconstitutionality made by plaintiffs against any future legislative apportionment adopted by Indiana authorities before December 1, 1965. Finally, jurisdiction is retained in order that this court may prepare a stand-by reapportionment scheme for the 1966 Indiana election for state legislators, to be effective should the Indiana authorities refuse or fail to produce a constitutional apportionment scheme before the cutoff date of December 1, 1965; and the court will receive at any time before November 1, 1965, any recommendations of any of the parties hereto with respect to a constitutional reapportionment.

## ENTRY APPOINTING ADVISORY PANEL

By its Entry and Order of September 20, 1965, this three-judge court found and declared Senate Enrolled Act 341, Chapter 230, of the Acts of the Ninety-fourth General Assembly of the State of Indiana (1965 Indiana Legislative Reapportionment Act) to be unconstitutional and void as violative of the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States. The court set December 1, 1965 as the cutoff date of the period within which the Indiana legislature may adopt a constitutional reapportionment scheme for the State General Assembly elections for the year 1966. The court retained jurisdiction for the purpose of passing upon any future claims of unconstitutionality made by plaintiffs against any future legislative apportionment act adopted by Indiana authorities before December 1, 1965; and further, jurisdiction was retained in order that the court may prepare a stand-by reapportionment scheme for the 1966 Indiana election for state legislators, to be effective should the Indiana authorities fail or refuse to produce a constitutional apportionment scheme before the cutoff date of December 1, 1965. In its order the court announced that it will receive at any time before November 1, 1965, any recommendations of any of the parties to this action respecting a constitutional reapportionment of the General Assembly.

As an aid to the court in the preparation of the stand-by reapportionment scheme for the 1966 Indiana election for State legislators, to be effective in the event the Indiana authorities fail or refuse to produce a constitutional apportionment scheme before the cutoff date of December 1, 1965, the court deems it appropriate to appoint an advisory panel of individuals, persons recognized as well trained and qualified in the law, to prepare and submit for the court's consideration a plan of apportionment which the panel believes will pass constitutional muster. Therefore, after careful consideration, the court appoints the following persons who, upon inquiry by the court, have signified their willingness to serve as members of the panel:

Dean Leon H. Wallace
of the Indiana University School of Law, Bloomington, Indiana, as Chairman of the panel.

Dean Joseph O'Meara
of the Notre Dame Law School, Notre Dame, Indiana.

Dean Louis F. Bartelt, Jr.
of the School of Law of Valparaiso University, Valparaiso, Indiana.

Upon request of the panel the court will make available any recommendation that may be submitted by the parties hereto, and the court stands ready to consult or confer from time to time with the members of the panel or its Chairman. In view of the time schedule fixed by the court in its order of September 20, 1965, the results of the work of the panel must be submitted no later than November 15, 1965.

The creation of the advisory panel is in no way to be construed as a desire on the part of the court to assume the primary responsibility of the Indiana General Assembly. The members of the court on the contrary hope that the Indiana authorities will proceed promptly to effectuate a constitutional reapportionment of the legislative seats in the General Assembly, and by that action render unnecessary any further action on the part of the court.