Patrick CHAVIS et al., Plaintiffs,

v.

Edgar D. WHITCOMB, Governor of the State of Indiana, Defendant,

and

John C. Ruckelshaus et al., Intervening Defendants.

CENTRAL CHRISTIAN LEADERSHIP CONFERENCE et al., Plaintiffs,

v.

Edgar D. WHITCOMB, Governor of the State of Indiana, Defendant.

Carl DORTCH et al., Plaintiffs-Respondents,

v.

Richard G. LUGAR et al., Defendants-Respondents,

and

Jerome Forestal et al., Defendants-Petitioners.

Nos. IP 69-C-23, 115 and 140.

United States District Court
S. D. Indiana,
Indianapolis Division.

June 18, 1969.

See also 305 F.Supp. 1364.

James W. Beatty, Bamberger & Feibleman, James Manahan, Indianapolis, Ind., for plaintiffs.

Richard C. Johnson, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

William K. Byrum, Fulmer, Burris & Byrum, Indianapolis, Ind., for intervening defendants.

Before KERNER, Circuit Judge, STECKLER, Chief District Judge, and NOLAND, District Judge.

## OPINION AND ORDER

KERNER, Circuit Judge.

These cases come before the Court on its own motion as to the first one and on motion in the other two to consider and decide whether this three-judge district court has jurisdiction over them and is properly convened under 28 U.S.C. § 2281.

All three cases raise, *inter alia*, the common question of whether or not certain existing or future statutory apportionments of the electors for various elected governmental bodies and officials do or would improperly "operate to minimize or cancel out the voting strength of racial or political elements of the voting population" in violation of the Equal Protection Clause of the United States Constitution. Fortson v. Dorsey, 379 U.S. 433, 439, 85 S.Ct. 498, 13 L.Ed. 2d 401 (1965), and Burns v. Richardson, 384 U.S. 73, 88, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966). Moreover, all three cases raise this question particularly with regard to the Negro population of the City of Indianapolis and of Marion County, Indiana. However, a careful examination of the pleadings and of the statutes which are sought to be declared unconstitutional convinces the court that there are important differences in these cases which require that two of them be remanded back to the one-judge district court which first considered them.

The *Chavis* case challenges two statutes which create two multi-member districts consisting of the whole of Marion County for the election of representatives and senators to their respective houses in the Indiana General Assembly. The complaint basically alleges unconstitutionality on two grounds, the first of which is, primarily, the racial discrimination issue already referred to as well as other forms of minority group voting power dilution. The second allegation is that voters in the Marion County coterminous districts have greater voting power than voters in other districts because they have an opportunity to cast more "critical votes"[1] and thereby influence the election of more representatives and senators than any other multi- or single-member district in the state. This allegation, if true, would be of statewide effect as the Marion County districts are the largest in the state both in terms of voting population and the number of representatives and senators elected from those districts.

 In Central Christian Leadership Conference (CCLC), the challenge was directed to statutes governing the apportionment of the Indianapolis Common

---

1. For a careful analysis of "critical votes," see Banzhaf, Multi-Member Electoral Districts—Do They violate the "One Man, One Vote" Principle, 75 Yale L.J. 1309, 1319–24 (1966).

Council. With the passage of the "Consolidated First Class Cities and Counties Act," Indiana Acts of 1969, ch. 173 (Senate Act 543), (which the parties refer to as the "UNI-GOV Act") the challenge was broadened to attack the expanded Council and other positions which are, or would in the future be, elected by voters in Indianapolis and the rest of Marion County. None of the elected officials involved would hold state office. All of the officials involved either hold or will hold county, city or "consolidated city" offices which are purely local in nature.

The *Dortch* case raises the identical question raised in *CCLC* and also raises other questions concerning the constitutionality of the UNI-GOV Act. These additional questions raise important constitutional issues including the alleged denial of equal protection in the redrawing of special taxing district boundaries in the "consolidated city" and the denial of due process for firemen and policemen in disciplinary proceedings before the fire and police boards of the "consolidated city."

Notwithstanding the importance of the questions in *CCLC* and *Dortch* and their impact on the law of Indiana, the actual operative effect of the UNI-GOV Act is purely local. In defining "County" in § 102(b) of the Act, it is stated that it only covers counties in Indiana in which there is only one city of the first class and no cities of the second class. "Consolidated City" is defined in § 102(f) as being such "County" and the city of the first class located therein. It is undisputed that Indianapolis is presently the only city of the first class in Indiana. Nor is it disputed that the only city of the second class which is, at present, reasonably close to becoming a city of the first class is Gary, but that it and Lake County could not be covered by the UNI-GOV Act as Hammond, a second class city, is also within Lake County. Moreover, the plaintiffs in *CCLC* and the Defendants-Petitioners in *Dortch* have alleged that one of the factors motivating the passage of the Act was the alleged

desire of some persons to "prevent another Gary." The court finds, on the basis of all the foregoing, that the UNI-GOV Act was intended to and does (presently and in the reasonable future) only apply to Indianapolis and Marion County.

The remedies sought in these three cases necessarily involve 28 U.S.C. § 2281 even if injunctions were not sought by name. While it is true that § 2281 covers state statutes and state board administrative orders, the cases have excepted from its coverage statutes and orders whose effect is purely local and not state-wide. See 28 U.S.C.A. § 2281, ns. 95, 99, and 146 (1965, Supp. 1968); and 1A Moore, Federal Practice, ¶ 0.205, n. 13 at 2234–35 (1965, Supp. 1968).

The most authoritative statement of the exception in a highly analogous situation is in Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967). In that case, a suit was filed against state officers to enjoin enforcement of a state statute which prescribed the apportionment and districting scheme for the election of members of a particular county board in Alabama. The court restated the general principle, 387 U.S. at 101, 87 S.Ct. at 1548:

> "The Court has consistently construed the section as authorizing a three-judge court not merely because a state statute is involved but only when a state statute of general and state-wide application is sought to be enjoined. See, e.g., Ex parte Collins, 277 U.S. 565, 48 S.Ct. 585, 72 L.Ed. 990; Ex parte Public National Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202; Rorick v. Board of Commissioners, 307 U.S. 208, 59 S.Ct. 808, 83 L.Ed. 1242; Cleveland v. United States, 323 U.S. 329, 332, 65 S.Ct. 280, 89 L.Ed. 274; Griffin v. School Board, 377 U.S. 218, 227–228, 84 S.Ct. 1226, 12 L.Ed.2d 256. * * *"

Applying the principle to the specific case, it held, *id.* at 102, 87 S.Ct., at 1548:

> "In No. 624, the constitutional attack was directed to a state statute dealing with matters of local concern—

the apportionment and districting for one county's governing board. The statute is not a statute of state-wide application, but relates solely to the affairs of one county in the State. The fact that state officers were named as defendants cannot change the result.

"It is said that there is enough similarity between this law and the laws governing other Alabama counties as to give this case a state-wide interest. It is said that 29 counties having a city of consequence located within their borders have the same 'crazy quilt' of malapportionment to insure rural voters' control. It is said that 32 other counties provide for election of county board members at large but with a local residence requirement which insures rural control. It is said that six rural counties elect their governing bodies on an at-large basis with no local residence requirement. We indicate no views on the merits. But we do suggest that even a variety of different devices, working perhaps to the same end, still leaves any one device local rather than state-wide for purposes of the statutory three-judge court."

See also Board of Supervisors of Suffolk County v. Bianchi, decided together with Moody v. Flowers, *supra*, and Dusch v. Davis, 387 U.S. 112, 114, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967), which held similarly as to apportionment schemes contained in local charters which had been approved by state statutes. A similar precedent, within this Circuit, is the dissolution of a three-judge court which was convened to consider the constitutionality of Illinois statutes which authorized a ward apportionment and districting scheme for Illinois cities over 500,000 population. The statutes clearly applied only to the City of Chicago and could not, in the reasonable future, apply to any other Illinois municipality. Skolnick, et al. v. Mayor and City Council of Chicago et al., Memorandum and Order of June 12, 1967, N.D.Ill., No. 66–C–2134, in No. 17181, Appendix 128–30 (7th Cir.), 415 F.2d 1291. As for the non-apportionment matters raised in the instant cases, see the general authorities cited above. The taxing aspect is best covered by Ex parte Public Nat'l Bank, 278 U.S. 101, 49 S.Ct. 43, 73 L.Ed. 202 (1928), and Wilentz v. Sovereign Camp, W.O.W., 306 U.S. 573, 59 S.Ct. 709, 83 L.Ed. 994 (1939), decided under the predecessor to the present § 2281.

Therefore, the three-judge district court must be dissolved in the *CCLC* and *Dortch* cases and they shall be transferred back to the judge who requested the convening of the court. While this necessarily requires the voiding of all procedural and any other orders entered in the name of the panel, it in no way impairs the original judge from reinstating those orders *nunc pro tunc*, if he so desires. This may be found desirable so as to do justice to the parties and expedite the litigation.

■ The situation in *Chavis* is seen to be quite the contrary. While it is true that Ind.Ann.Stat. §§ 34–102 and 34–104 (Supp. 1968), provide for the apportionment of particular local districts, they do so in the context of apportioning the entire state. Also, while the complaint only seeks relief as to the apportionment of Marion County, it is manifest that this is of state-wide effect. Firstly, the reapportionment is sought (as explained earlier) partly on the alleged ground that the present scheme denies equal protection to all Indiana voters outside Marion County. Secondly, the reapportionment sought is that of districts for the state's only state-wide legislative bodies. We hold that statutes governing the districting of a state into election districts for the state's only state-wide legislative bodies is *per se* of state-wide effect and not purely local in nature. Accordingly, we retain jurisdiction in the *Chavis* case. Cf. Stout v. Hendricks, 228 F.Supp. 568 (S.D.Ind.1963, 1964) (three-judge court); and Stout v. Bottorff, 246 F.Supp. 825 (S.D.Ind.1965) (three-judge court).

Wherefore, it is ordered that the jurisdiction of this court in the case of

Chavis, et al. v. Whitcomb, No. IP 69–C–23, be and the same is hereby sustained.

It is further ordered that this court has no jurisdiction over the cases of Central Christian Leadership Conference v. Whitcomb, No. IP 69–C–115, and Dortch v. Lugar, No. IP 69–C–140, and these cases are hereby transferred to the District Judge who requested the convening of these three-judge courts and and that any and all orders previously entered by these courts in those cases are declared to be null and void, and that these courts are hereby dissolved as to those two cases.

ORDER in No. 1P69–C–23.

This case comes before the court on certain pretrial preliminary motions. The motions and the rulings as to each of them are:

*I. Plaintiffs' Motion to Have This Case Declared a Class Action Pursuant to Rule 23, Fed.R.Civ.P.*

■ Plaintiffs' complaint asserts that this action is filed as a class action covering five subclasses of voters and residents of Marion and Lake Counties. The presence of the intervening defendants as well as the court's own knowledge reveal that the class sought to be maintained is so broad and heterogeneous and has such a disparity of interests that it is not possible for the court to recognize any representative party who could fairly and adequately protect the interests of the class. Rule 23(a) (3) and (4), Fed.R. Civ.P. Wherefore, it is not possible to maintain this action as to any class alleged to exist under Rule 23(b), Fed.R. Civ.P.

■ It is stated in the complaint that each of the plaintiffs is both a resident and a voter of the aforesaid counties. This assertion has not been denied or controverted by defendant and therefore must be taken as admitted. We find that these individuals have standing to sue and can properly maintain this action. Baker v. Carr, 369 U.S. 186, at 204–208, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961),

and cases cited therein. *Cf.* 42 U.S.C. § 1981 et seq.

*II. Petition by Certain Persons to Intervene as Parties Defendant.*

■ The motion by the petitioning intervening defendants for leave to intervene is GRANTED nunc pro tunc as of June 12, 1969, pursuant to Rule 24(b) (2), Fed.R.Civ.P. It is a general principle that intervening defendants enter the case as they find it, bound by all orders and proceedings prior to the date of intervention.

*III. Intervenors' Motion for Continuance.*

In considering this motion the court observes that permissive intervention is, by definition, at the discretion of the court and subject to the rule of doing substantial justice to the original parties. Rule 24, Fed.R.Civ.P. expressly provides that "the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

■ The court finds that this action is before it on an emergency basis due to the time factor necessitating the final resolution of this case prior to the date for first setting in motion the machinery for the next primary election for the representatives and senators to the 1971 Indiana General Assembly. Moreover, both original parties have indicated to the court their reasonable expectations that the findings made by this court will be appealed.

The original parties have been engaged in preparations for trial in expectation that trial would commence on June 17, 1969, as ordered by the court on May 12, 1969. Accordingly, the court finds that justice will not best be served and prejudice will entail to the original parties if the intervenors' motion for continuance is granted; wherefore, the motion is denied. *Cf.* 4 Moore, Federal Practice, ¶ 24.10[4], ¶ 24.13[1] (2 ed. 1968).

*IV. Defendant's Motion for Continuance.*

Defendant moved for a continuance alleging that he has not had sufficient

time to ascertain the accuracy of various exhibits prepared by plaintiffs and alleging that he may be prejudiced by permitting the intervention referred to in II, *supra.* On oral argument of the motion, defendant relied only on the latter ground. In view of our disposition of the petition to intervene and the intervenors' motion for continuance in II and III above, defendant's objections have been rendered moot; wherefore, the motion is denied.

### V. Plaintiff's Motion to Strike Certain Pleadings as Sham.

The court finds that this motion has been rendered moot by statements made during oral argument of the motions hereinbefore discussed; wherefore, the motion is denied.